## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**TASHA FAYE CORBITT**                                                   **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO.  3:14CV91 HTW-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                   **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Tasha Faye Corbitt appeals the final decision denying her applications for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI").  The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.  Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that the decision be affirmed.

### Factual and Procedural Background

In November 2011, Plaintiff filed applications for SSI and DIB alleging a disability onset date of  March 31, 2011, due to a back injury.  She was 31 years old at the time, with past relevant work experience as a cook/cashier and poultry dresser, and has an eleventh-grade education.  Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review.  She now appeals that decision.

Upon reviewing the evidence, the ALJ concluded that Corbitt was not disabled under the Social Security Act.  At step one of the five-step sequential evaluation,[1] the ALJ found that she had not engaged in substantial gainful activity since her onset date of March 31, 2011.  At steps two and three, the ALJ found that although Plaintiff's mild bulging discs in her lumbar spine were severe, they did not meet or medically equal any listing.  At step four, the ALJ found that Plaintiff had the residual functional capacity to "lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk and sit, each for 6 hours during an 8 hour day.  She is restricted to doing no more than occasional climbing, balancing, stooping, crouching, kneeling, and crawling."[2]  Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform her past relevant work.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2)

---

[1]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2]ECF No. 24, pp. 72-73.

whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d

726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)).

Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as

adequate to support a conclusion; it must be more than a scintilla, but it need not be a

preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v.*

*Sullivan*, 954 F.2d at 295 (5th Cir. 1992)).  This Court may not re-weigh the evidence, try

the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence

that preponderates against the ALJ's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th

Cir. 1994).

### Discussion

Corbitt argues that the Commissioner's decision should be reversed or

alternatively remanded because the ALJ failed to give controlling weight to the opinion of

her treating physician, and erroneously relied on testimony from a vocational expert who

was not present at the administrative hearing.  She also argues that the Appeals Council

failed to properly consider new evidence.

The record reflects that Dr. Elias Abboud has been Plaintiff's primary treating

physician since 2004, and has treated her for a variety of ailments including lower back

pain/lumbago status post injury.  In 2012, Dr. Abboud submitted two medical source

statements on her behalf.  In May 2012, Dr. Abboud answered a form letter from

Plaintiff's counsel indicating that Plaintiff has low back pain and a bulging disk which

would prevent her from obtaining full-time employment.  In August 2012, he answered a similar letter indicating that Plaintiff would miss three or more days from work per month, and would need to lie down for more than 15 minutes, twice per day, due to medication side effects.  He also opined that Plaintiff could not sit, stand, or work for more than 2 hours during an eight-hour workday.[3]

An ALJ is free to reject any medical opinion, in whole or in part, when good cause is shown.  Good causes exists when the evidence supports a contrary conclusion, when the opinions are conclusory, or when they are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995).  In analyzing the severity of Plaintiff's back impairment, the ALJ provided the following good cause for rejecting Dr. Abboud's conclusions:

> The claimant was treated with pain medications, non-steroidal anti-inflammatory medication, physical therapy, and neurological consults. Overall, Dr. Abboud opined that the claimant's conditions, illnesses, and/or injuries prevented her from maintaining *full-time* employment.  In another letter responding to the interrogatories from claimant's representative, dated August 20, 2012, Dr. Abboud stated that the claimant has missed three or more unscheduled days per month from work due to medical treatment. Despite the lack of subjective medical evidence, he also stated that claimant needed to lie down for more than fifteen (15) minutes, twice a day, due to the effects of medication and pain from her lower back injury.  Dr. Abboud also stated that claimant could not stand or sit in any combination for an eight (8) hour day or stand/walk for more than two (2) hours during an eight (8) hour workday.  The undersigned finds that the treating physicians' opinions are not credible because they are not supported by objective medical findings and/or his own treating progress notes in the record. Furthermore, the opinion is not supported by objective diagnostics (such as the x-rays and MRI scans in the medical evidence of record) and the

---

[3]ECF No.  24, pp. 300, 326-327, 333.

> findings are contradicted by an *independent* medical evaluation. The course
> of treatment pursued by this physician has not been consistent with what
> one would expect if the claimant were truly disabled. Accordingly, the
> undersigned does not accept Dr. Abboud's conclusions with regard to the
> claimant's residual functional capacity.[4]

Notwithstanding, Plaintiff maintains that Dr. Abboud's opinions are entitled to controlling

weight because his treating records are internally consistent. However, like his opinions,

Dr. Abboud's contemporaneous notes are devoid of objective clinical and diagnostic

findings establishing impairments that could be reasonably expected to produce the *degree*

*of limitations* that he assigned.

A treating physician's opinion is given controlling weight when it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence." *Newton*, 209 F.3d at 455. Neither of the

medical source statements submitted by Dr. Abboud contain narrative explanations or

written reports. They are merely one-word answers to a series of questions prepared by

counsel. "Form reports in which a physician's obligation is only to check a box or fill in a

blank are weak evidence at best. . . . [but when] these so-called reports 'are

unaccompanied by thorough written reports, their reliability is suspect.'" *Mason v.*

*Shalala*, 994 F.2d 1058, 1065 (3rd Cir. 1993) (quoting *Brewster v. Heckler*, 786 F.2d 581

(3rd Cir. 1986)). Further, despite submitting medical opinions that Plaintiff's impairments

would prevent her from returning to work, Dr. Abboud's medical records indicated that he

---

[4]ECF No. 24, pp. 74-75 (emphasis in original and internal record citations omitted).

released her to return to work in June 2011.[5]

The degree of limitations assigned by Dr. Abboud is also inconsistent with the substantial evidence of record, including Plaintiff's daily activities and an independent medical examination conducted in August 2012.  Despite complaints of unremitting pain, Plaintiff testified that she prepares her children for school and performs light household chores (i.e. sweeps, washes dishes, folds clothes, and cooks light meals).  She also admitted that she has received only conservative treatment and undergone minimal therapy.  No steroid injections have been administered and no surgical intervention has ever been recommended.  As the ALJ observed, the evidence confirms that Plaintiff's medications were relatively effective in controlling her symptoms.[6]

Plaintiff also takes exception to the ALJ giving "some" weight to the findings of one-time independent medical examiner, Dr. Phillip Blount.  Specifically, Plaintiff argues that the ALJ erroneously accepted Dr. Blount's medical opinion over that of Dr. Abboud. The Court does not so interpret the ALJ's decision.  Although Plaintiff complains that Dr. Blount was a one-time medical examiner who was not privy to all of her medical records, Dr. Blount's assessment is based on his first-hand medical examination.  *Qualls v. Astrue*, 339 F. App'x. 461, 466 (5th Cir. 2009) (ALJ's decision was properly based on the medical opinion of doctors who had treated and examined Plaintiff, and thus had informed, first-

---

[5]*Id.* at  300, 311, 326-327, 331, 333.

[6]ECF No. 24, pp. 88-94.

6

hand, knowledge to support their opinions). "If the ALJ could properly reject the conclusions of a treating physician in favor of a non-examining physician, . . . , certainly the ALJ is free to choose among the conclusions of two examining physicians, even though one is the claimant's treating physician." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

Dr. Blount indicates in his report that he reviewed Plaintiff's medical records and treatment history to date, including CT scan evidence showing pars defect at L5 with no spondylolisthesis. He also noted that Plaintiff's treating physician had released her to return to work in June 2011. On examination, Dr. Blount noted that Plaintiff's chief complaint was low back pain with radiation to the lower limb and left foot, but he found no "reliable evidence or neurologic deficit in the lower limbs." While Plaintiff points out that Dr. Blount stated that "it is possible that the evidence of bilateral pars defects could result in back pain with radiation into the buttock and sometimes thighs," he also estimated that Plaintiff had a "3% whole person impairment rating based on nonspecific, chronic back pain with radicular complaints," unless flexion extension x-rays revealed spondylolisthesis. According to Dr. Blount, such a rating would be compatible with returning to work, with Plaintiff's tolerance being the only issue. Plaintiff also had normal tandem gait and Romberg tests, straight leg raises that were negative for radicular pain and

paresthesias bilaterally, and a normal pain-free range of motion.[7]

Plaintiff notes that Dr. Blount failed to address an MRI taken in February 2012. However, she fails to explain how the MRI results support a finding of disability. The MRI report indicates as follows:

> There is a mild midline bulging disc at the L5-S1 disc level. No compromise of the neural passageways is seen. Disc spaces and vertebral body heights are well maintained. Marrow signal and disc space signal is normal. Alignment is normal. Conus is well seen [and] has a normal appearance. There is a tiny Tarlov cyst overlying the S2 vetebra which is of little clinical concern. Surrounding structures are unremarkable.[8]

As noted by the ALJ, the report concludes that Plaintiff had mild midline disc bulging without compromise of the neural passageways, and was otherwise unremarkable.

Given the evidence as stated, the ALJ's reasons for rejecting Dr. Abboud's conclusions are well supported. Although Plaintiff argues the ALJ erred in accepting the findings of an indepedent medical examiner over those of her treating physician, conflicts in evidence are for the Commissioner to resolve, not this Court. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008). To the extent their opinions were in tension with one another, the ALJ was justified in accepting the findings of Dr. Blount rather than Dr. Abboud's. *Pineda,* 289 F. App'x at 713.

Next, Plaintiff charges that the Appeals Council erred in failing to properly consider new medical evidence. Following the administrative hearing, Plaintiff submitted

---

[7]ECF No. 24, pp. 329-332.

[8]*Id.* at 310.

medical records from Dr. Orhan Ilercil showing that she received steroid injections for her back pain on October 16, 2012.  The Appeals Council considered the additional evidence but found that it did not provide a basis for changing the ALJ's decision.

When additional evidence is considered by the Appeals Council, the evidence becomes part of the administrative record and a reviewing court must determine whether the denial of benefits remains supported by substantial evidence.  *Jones v. Astrue*, 228 F. App'x. 403 (5th Cir. 2007); *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cri.  2005). There must be a reasonable possibility that the evidence would have changed the outcome of the Commissioner's determination.  *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). In the present case, Plaintiff fails to show that receiving a steroid injection after the administrative hearing would have changed the outcome of the ALJ's decision.  Such minimal treatment did not contradict earlier evidence that a weighing of old and new evidence was required.  *See Jones*, 228 F. App'x at 407.  Nor does it undermine the existence of substantial evidence supporting the ALJ's residual functional capacity assessment.

Finally, the Court rejects Plaintiff's assertion that the ALJ erroneously relied on testimony from a vocational expert who was not present at the administrative hearing.  The hearing transcript indicates that Vocational Expert Dr. Gary Brown testified at the administrative hearing, but he is incorrectly identified in the first paragraph of the ALJ's decision as Dr. Jerry M. Rowzee.  Despite this error, a plain reading of the ALJ's decision

in its entirety reveals that Dr. Brown's testimony is both consistent with the ALJ's analysis of the vocational evidence and his step-four finding that Plaintiff could return to her past relevant work.  Plaintiff was not prejudiced by this typographical error.  Any argument to the contrary is without merit.  *See Troupe v. Barnhart*, 140 Fed. App'x 544 (5th Cir.2005) (rejecting plaintiff's argument as frivolous where a plain reading of the transcript revealed a misspelled name was a typographical error).[9]

In sum, the undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.  For these reasons, it is the opinion of the undersigned United States Magistrate Judge that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

---

[9]ECF No. 24, pp. 69-76, 100-103.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); Douglas v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 30th day of October 2015.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE